UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                                :

THE BOARDS OF TRUSTEES OF    :
THE OPERATING ENGINEERS     :
LOCAL 825 WELFARE FUND,     :
OPERATING ENGINEERS LOCAL :
825 PENSION FUND, OPERATING :
ENGINEERS LOCAL 825         :
ANNUITY FUND, OPERATING    :
ENGINEERS LOCAL 825         :    CIVIL ACTION NO. 06-1795 (JCL)
SAVINGS FUND, OPERATING    :
ENGINEERS LOCAL 825         :    **OPINION**
SUPPLEMENTAL               :
UNEMPLOYMENT FUND,       :
OPERATING ENGINEERS LOCAL :
825 APPRENTICESHIP AND    :
TRAINING FUND,            :
                                   :
               Plaintiffs,    :
      v.                  :
                                   :
ROBERT SILAGY LANDSCAPING :
INC. d/b/a or t/a SILAGY      :
LANDSCAPING            :
                                   :
             Defendants.   :
_____:

**LIFLAND, District Judge**

     Plaintiffs, the Boards of Trustees of the Operating Engineers Local 825

Welfare Fund, Operating Engineers Local 825 Annuity Fund, Operating Engineers

Local 825 Savings Fund, Operating Engineers Local 825 Supplemental

Unemployment Fund, and Operating Engineers Local 825 Apprenticeship and

Training Funds (collectively "Plaintiffs"), petition this Court for entry of default

judgment pursuant to Federal Rule of Civil Procedure 55(b) against Defendant

Robert Silagy Landscaping Inc. ("Silagy").  For the reasons stated herein,

Plaintiffs' motion is granted in whole as to liability and in part as to damages.

## I.    Background

Local 825 is a New Jersey labor organization affecting commerce within the

meaning of the Labor Management Relations Act ("LMRA") 29 U.S.C. § 4 et seq.

(Compl. ¶ 3; Affidavit of Joseph Whittles[1] ("Whittles Aff.") ¶ 2.)  Operating

Engineers has its principal office in New Jersey and manages several fringe

benefit plans (the "Funds") which are "welfare plans," "pension plans," and

"employee benefit plans" within the meaning of the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. § 1002(1), (2), and (3).  (Compl. ¶ 5; Whittles

Aff. ¶ 3.)  The Funds are managed by a Board of Trustees whose Trustees are

composed of Union and Employer representatives and are fiduciaries within the

meaning of ERISA.  (Compl. ¶¶ 5-6; Whittles Aff. ¶¶ 4-5.)  Silagy is a

---

[1] Joseph Whittles is the Recording Corresponding Secretary for Local 825 and also works with the Operating Engineers to collect outstanding contributions. (Whittles Aff. ¶ 1)

corporation that conducts business in New Jersey and an employer in an industry affecting commerce within the meaning of the LMRA.  (Compl. ¶ 7; Whittles Aff. ¶ 6.)

During the calendar year 2005, Local 825 and Silagy were parties to a collective bargaining agreement ("CBA") that required Silagy to remit weekly contributions to the Funds on behalf of all employees covered by the CBA. (Compl. ¶¶ 9, 10; Whittles Aff. ¶¶ 7, 8, Ex. A.)  The CBA also required Silagy to deduct from its employees' wages and remit to Local 825 a work assessment for Local 825 union dues and contributions to Local 825's Political Action Committee.  (Compl. ¶¶ 12, 13; Whittles Aff. ¶¶ 10, 11.)  The CBA incorporated by reference the terms of the Trust Agreements of the Funds which allowed the Funds to audit the payroll and financial records of employers participating in the Funds.  (Compl. ¶ 11; Whittles Aff. ¶¶ 9, 12.)  In an action to collect delinquent contributions, the CBA and the Trust Agreement also entitled the Funds to collect interest (at a rate of 2% above prime rate), liquidated damages of 20%, attorneys' fees, costs and auditor's fees.  (Whittles Aff. ¶ 13, Ex. B, C, D.)

The Funds audited Silagy's payroll records covering the periods from January 1, 2005 through December 31, 2005.  (Whittles Aff. ¶ 14.)  These audits revealed that Silagy was delinquent in its contributions to the Funds for the

calendar year 2005, and the Funds so notified Silagy by letter dated February 23,

2006.  ( Whittles Aff. ¶¶ 15-16, Ex. D.)  Plaintiffs claim the audit demonstrated

that Silagy owes the Funds $16,068.91.  (Whittles Aff. ¶ 17.)

Plaintiff filed this action on April 18, 2006.  They seek $16,068.91 in

delinquent funds and $803.45 in interest for a total of $16,872.36.[2]  Plaintiffs also

seek attorney's fees and costs.  The record indicates that Defendant was properly

served with process on April 25, 2006.  Defendants failed to answer or otherwise

plead with respect to the Complaint as required by Rule 12(a).  On June 19, 2006,

Plaintiffs petitioned the Clerk of the Court for an entry of default against

Defendants pursuant to Rule 55(a).  On June 19, 2006, the Clerk of the Court

entered Default against Defendant for failure to appear.  On September 8, 2006,

Plaintiffs submitted the instant motion, seeking default judgment against

Defendant.  The record indicates that Plaintiffs served Defendant with notice of its

motion.

## II.    Discussion

### A.    Default Judgment

---

[2] Plaintiffs' request for relief in its instant default judgment motion differs somewhat from the relief sought in its Complaint.  The Court will rely on Plaintiff's renewed requests for relief in its instant motion, as detailed in the Whittles Affidavit.

### i.      Standard of Review

Federal Rule of Civil Procedure 55(b)(2) governs the Court's entry of

default judgment.  The party against whom default judgment is requested must

have been properly served with process.  Fed. R. Civ. P. 55(b)(2); Local Union

No. 98, Int'l Bd. of Elec. Workers v. Cableco, Inc., No. 99-755, 1999 WL 269903,

at *1 (E.D. Pa. Apr. 28, 1999).  Before a default judgment may be entered by the

court, the moving party must have obtained an entry of default pursuant to Rule

55(a); see Lansford-Coaldale Joint Water Auth. v. Tonolli Corp., 4 F.3d 1209,

1226 (3d Cir. 1993); 10A Wright, Miller, & Kane, Federal Practice and Procedure,

§ 2682, at 13 (3d ed. 1998).

A party seeking default judgment is not entitled to such relief as a matter of

right, however, even where the defendant was served with process, and where the

default has been noted pursuant to Rule 55(a).  See, e.g., Local Union No. 98,

IBEW v. Cableco, Inc., No. 99-0755, 1999 U.S. Dist. LEXIS 7024, at *3 (E.D. Pa.

Apr. 28, 1999) (citing  Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1303

(3d Cir. 1995)).  Rather, a court is "required to exercise sound judicial discretion

in deciding whether to . . . enter default judgment."  Id.   Default judgment is

generally disfavored because it prevents resolution of a plaintiff's claims on the

merits.  Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984).  Thus, when

considering a motion for default judgment, a court may consider the following

factors: the potential amount of damages; whether issues of material fact or

substantial public concern are implicated; whether the default is primarily

technical; whether the moving party has been substantially prejudiced by the delay

involved; whether the grounds for default are clearly established or in doubt;

whether the default was attributable to good faith, mistake, or excusable neglect;

and whether the court may later be obliged to set aside the default.  Franklin v.

Nat'l Maritime Union of Am., No. 91-0480, 1991 U.S. Dist. LEXIS 9819, at *1

(D.N.J. July 16, 1991) (citing 10 Wright, Miller & Kane, Federal Practice and

Procedure § 2685 (1983)), aff'd, 972 F.2d 1331 (3d Cir. 1992).

"A default judgment entered by the court binds the party facing the default

as having admitted all of the well pleaded allegations in the plaintiff's complaint."

Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc., 370 F.3d 715, 722 (8th

Cir. 2004) (citing Fed. R. Civ. P. 55(b)(2)).

### ii.     Plaintiffs are Entitled to Default Judgment as to Silagy's Liability

Here, the record indicates that Plaintiffs effectuated service of process on

Defendant.  Default was entered by the Clerk.  Furthermore, although notice of the

instant motion is not required in order to enter a default judgment under Rule

55(b)(2), the record indicates that Defendant was served with notice of the instant motion for default judgment and with supporting documents on or about September 8, 2006, via first class mail.  Thus, the Court is satisfied that Defendant had ample notice of the Complaint and of the instant motion for default judgment and chose not to respond.

Accordingly, the Court will treat the allegations as to liability in the complaint as true and admitted by Defendant.  The public concern for ensuring that employers who are obligated under collective bargaining and trust agreements contribute to their employees' funds weighs in favor of entering default judgment in this matter.  A failure to enter default in this matter would prejudice Plaintiffs in their ability to enforce the terms of their collective bargaining and trust agreements.  Plaintiffs have established grounds supporting default judgment. There is no evidence that Silagy's failure to answer the summons and complaint in this matter or to respond to the Plaintiffs' instant motion for default judgment is attributable to a good-faith explanation, mistake, or excusable neglect.  After viewing Plaintiffs' complaint and affidavits in support of the motion for default judgment, the Court is satisfied that Plaintiffs have sufficiently established the factors necessary to warrant entry of a default judgment.

B.    **Damages**

### i.      Standard of Review

The only allegations in a plaintiff's complaint that are not treated as true

upon the entry of a default judgment are those pertaining to the amount of

damages.  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).  Under

Rule 55(b)(2) a district court "may conduct such hearings or order such references

as it deems necessary and proper" in order "to determine the amount of damages."

However, if the damages are for a "sum certain or for a sum which can by

computation be made certain," a further evidentiary inquiry is not necessary and a

district court may enter final judgment.  Fed. R. Civ. P. 55(b)(1); KPS Assocs.,

Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003); Comdyne I, 908 F.2d

at 1149.  A claim for damages is not a "sum certain unless there is no doubt as to

the amount to which a plaintiff is entitled as a result of the defendant's default."

KPS Assocs., 318 F.3d at 19.  "Such situations include actions on money

judgments, negotiable instruments, or similar actions where the damages sought

can be determined without resort to extrinsic proof."  Id. at 19-20 (internal

quotations omitted).

Even when faced with claims for uncertain damages a district court may

still, using its discretion, decline to hold a Rule 55(b)(2) hearing, particularly

where the "'amount claimed [is] capable of ascertainment from definite figures

contained in the documentary evidence or in detailed affidavits.'"  Id. at 21

(quoting Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d

1319, 1323 (7th Cir. 1983)).

### ii.    Plaintiffs' Entitlement to Damages

Plaintiffs claim that an audit demonstrated that Silagy owes the Funds

$16,068.91.  (Whittles Aff. ¶ 17.)  This figure is not a "sum certain," but Plaintiffs

have submitted documentary evidence substantiating this figure.  (Whittles Aff.

Ex. B.)  Thus, no Rule 55(b)(2) hearing is necessary, and default judgment will be

awarded to Plaintiffs in the amount of $16,068.91 for past-due contributions to the

Funds.

Plaintiffs also claim they are entitled to $803.45 in interest on the

delinquent funds for the period from March 1, 2006 to the September 5, 2006

return date of this motion.  (Whittles Aff. ¶ 18.)  The Whittles Affidavit claims

that this figure is appropriate because as of May 10, 2006, the prime interest rate

as reported in the Wall Street Journal was 8%, and therefore, the Funds' interest

rate (2% above prime (see Whittles Aff. Ex. D.)) is 10% per annum, (Whittles Aff.

¶ 18.).  The Plaintiffs then claim that 10% per annum applied to the $16,068.91

principal due from March 1, 2006 to September 5, 2006, equals $803.45.

The Court finds that the amount Plaintiffs claim in interest is not capable of

ascertainment from definite figures contained in the documentary evidence or in

detailed affidavits.  First, Plaintiffs offer no evidence, other than their conclusory

allegation, that the prime interest rate was 8% on May 10, 2006.  Second, because

Plaintiffs seek interest on the past-due amount starting on March 1, 2006, it is not

clear why the May 10, 2006 prime interest rate is relevant.  Third, Plaintiffs'

selection of March 1, 2006 as the first date on which interest accrued is

unexplained.  Fourth, even assuming the appropriate interest rate is 10%, and the

appropriate time frame begins on March 1, 2006, by the Court's calculations the

total interest due to Plaintiffs is $831.60, not $803.45.[3]  This discrepancy casts

further doubt on the Plaintiffs' interest computation.  The Court will require

documentary evidence from Plaintiffs demonstrating their claimed interest.

Otherwise, the Court will schedule a Rule 55(b)(2) damages hearing on the issue.

Plaintiffs also seek an award of costs and attorney's fees.  Plaintiffs have

submitted a detailed affidavit demonstrating that counsel expended 12.30 hours on

this matter at a rate of $270.00 per hour, for a total of $3,321.00. (Affidavit of

---

[3] Ten percent of the past due amount, $16,068.91, is approximately
$1,606.89.  This figure divided by 365 days in one year equals the amount of
interest due per day on the principal amount at 10% per annum: approximately
$4.40.  From March 1, 2006 to, and including, September 5, 2006, 189 days
elapsed. The per diem interest amount, $4.40, multiplied by 189 days elapsed,
totals $831.60.

David Grossman ("Grossman Aff.") ¶ 2.)  Additionally, counsel expended $99.95

in various costs.  (Grossman Aff. ¶ 2.)  Thus, the Court will award Plaintiffs

$3,420.95 in attorney's fees and costs.

## III.    Conclusion

In sum, the Court finds Defendant liable for breach of the CBA, and will

enter default judgment for Plaintiffs in the amount of $19,489.86.[4]  As for

Plaintiffs' request for interest, a damages hearing is appropriate under the

circumstances, unless within 30 days Plaintiffs provide the necessary supplemental

information referred to above.

s\ John C. Lifland, U.S.D.J.

November 9, 2006

---

[4] This figure reflects the sum of $16,068.91 in past-due fund contributions, and $3,420.95 in attorney's fees and costs.